UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONNY L. BERRY, | ) | CASE NO.  3:14CV2518 |
| | ) | |
| Petitioner | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| WARDEN, Southern Ohio | ) | REPORT AND RECOMMENDATION |
| Corr. Facility, | ) | |
| | ) | |
| Respondent | ) | |

McHARGH, MAG. J.

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to

Local Rule 72.2(b)(2).  Before the court is the petition of Donny L. Berry ("Berry")

for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  The petitioner is in

the custody of the Ohio Department of Rehabilitation and Correction pursuant to

journal entry of sentence in the case of State of Ohio v. Berry, Case No. 11-CR-

11115 (Defiance County Jan. 3, 2012).  (Doc. 14, RX 15.)  For the following reasons,

the magistrate judge recommends that the petition be denied.

The petitioner Berry has filed a petition through counsel for a writ of habeas

corpus, arising out of his 2011 convictions for aggravated murder; involuntary

manslaughter; conspiracy to traffic cocaine, and marijuana; and tampering with

evidence, in the Defiance County (Ohio) Court of Common Pleas.  In his petition,

Berry raises eleven grounds for relief:

1

1.  The state court's determination that appellant was not denied the effective assistance of appellate counsel when counsel failed to raise on appeal various  meritorious issues violating appellant's <u>Sixth Amendment</u> right to the effective assistance of counsel as guaranteed by the United States Constitution was contrary to or an unreasonable application of federal law and Strickland v. Washington which resulted in a decision that was based on an unreasonable determination of the facts.

2.  The trial court erred and abused its discretion in denying appellant's motion to dismiss and or suppress as statements were obtained from appellant on April 15th, 2011, were obtained in violation of appellant's <u>Fifth Amendment</u> right against self-incrimination and is contrary to or an unreasonable application [of] Miranda v. Arizona and its [progeny].

3.  The trial court erred and abused its discretion erred in denying appellant's motion to dismiss and or suppress as statements were obtained from appellant on April 15th, 2011, were obtained in violation of appellant's <u>Sixth Amendment</u> right to counsel as guaranteed by the United States Constitution and is contrary to or an unreasonable application of McNeil v. Wisconsin.

4.  The petitioner['s] <u>Fifth, Sixth, and Fourteenth Amendment</u> rights as guaranteed by the United States Constitution were violated by the state agents knowingly circumventing petitioner['s] right to counsel and using illegally obtained incriminating statements against petitioner at trial.  This was contrary to [or] an unreasonable application of Maine v. Moulton and its progeny.

5. Petitioner was deprived of his <u>Fifth and Fourteenth Amendment</u> right to due process of law and of his <u>Sixth Amendment</u> right as guaranteed by the United States Constitution to [an] impartial jury due to a jury member of his jury failing to disclose material information during jury voir dire.  The court's decision was  contrary to or an unreasonable application of clearly establish[ed] federal law.

6.  Petitioner was deprived of his <u>Sixth Amendment</u> right to effective assistance of counsel as guaranteed by the United States Constitution due to appointed counsel['s] failure to present exculpatory evidence, impeach key witnesses, subpoena crucial witnesses, improper inducement of a guilty plea, and [inadequate] representation before during and after petitioner['s] trial, filing frivolous motions which

2

prejudiced the petitioner['s] right to a speedy trial, failure to object to the hearsay testimony of Doug Engel, Dave Richardson, and Tobey Delaney, which was contrary to clearly establish[ed] federal law and or an unreasonable application of Strickland v. Washington.

7.  Petitioner was deprived of his <u>Fifth and Fourteenth Amendment</u> right[s] as guaranteed by the United States Constitution due to the trial court denying the  petitioner access to funds needed to hire forensic analyst for the preparation and presentation of petitioner['s] defense and is contrary to clearly establish[ed] federal law or an unreasonable application of Ake v. Oklahoma and its progeny and clearly establish[ed] federal law.

8.  Petitioner was deprived of his <u>Fifth and Fourteenth Amendment</u> rights as guaranteed by the United States Constitution due to the prosecution eliciting perjured testimony from a state witness (Shannon Wilson) during petitioner['s] trial violating the petitioner['s] right to due process of law as guaranteed by <u>Fifth and Fourteenth Amendment</u>. The court's decision was contrary to and [an] unreasonable application of clearly established federal law.

9.  The petitioner['s] <u>Fifth, Sixth, and Fourteenth Amendment</u> rights as guaranteed by the United States Constitution were violated due to police conducting a custodial interrogation after petitioner invoked his right to counsel present during custodial interrogation and the trial court finding that petitioner['s] [waiver] of this Fifth and Sixth Amendment rights were valid based on the fact that petitioner was read his Miranda rights.  The court's decision was contrary to clearly establish[ed] federal law and or [an] unreasonable application of Maryland v. Shatzer.

10.  The state court's determination in denying defendant/appellant['s] motion for acquittal and the evidence was insufficient to support the jury's conviction of  Defendant/Appellant for the crime of aggravated murder, in violation of [Ohio Rev. Code §] 2903.01, Count I of the indictment depriving the petitioner of his <u>Fifth and Fourteenth Amendment</u> right to due process of law.

11.  Petitioner was [deprived] of his <u>Fifth and Fourteenth Amendment</u> rights as guaranteed by the United States Constitution to due process of law due to the prosecution['s] failure to disclose material evidence to the petitioner['s] appointed counsel upon request prior to trial which

was contrary to clearly establish[ed] federal law or an unreasonable application of Maryland v. Brady.

(Doc. 1, § 12.)

The respondent has filed a 82-page Return of Writ (doc. 14), and Berry has filed a Traverse (doc. 19, corrected traverse).

## I. FACTUAL AND PROCEDURAL BACKGROUND

After a jury trial, Berry was convicted of aggravated murder; involuntary manslaughter; conspiracy to traffic cocaine, and marijuana; and tampering with evidence, in the Defiance County (Ohio) Court of Common Pleas. (Doc. 14, RX 12.) Berry was sentenced to serve an aggregate sentence of thirty years to life on January 3, 2012. (Doc. 14, RX 15.)

### A. Direct Appeal

Berry timely appealed his conviction and sentence. On direct appeal, Berry raised three assignments of error:

1. The trial court erred in denying defendant/appellant's motion for acquittal and the evidence was insufficient to support the jury's conviction of defendant/appellant for the crime of aggravated murder, in violation of [Ohio Rev. Code §] 2903.01, Count I of the indictment.

2. The jury's verdict finding defendant/appellant, guilty beyond a reasonable doubt of the crime of aggravated murder, in violation of [Ohio Rev. Code §] 2903.01, Count I of the indictment, is against the manifest weight of the evidence.

3. Defendant/appellant was denied a fair trial due to the ineffective assistance of counsel.

4

(Doc. 14, RX 17.)  The court of appeals affirmed the judgment of the trial court.

(Doc. 14, RX 20; State v. Berry, No. 4-12-03, 2013 WL 2638704 (Ohio Ct. App. June

10, 2013).)

Berry appealed that judgment to the Supreme Court of Ohio, asserting the

following propositions of law:

> 1.  The trial court erred in denying Defendant/Appellant's motion for
> Acquittal and the evidence was insufficient to support the jury's
> conviction of  Defendant/Appellant for the crime of Aggravated
> Murder, in violation of [Ohio Rev. Code §] 2903.01, Count I of the
> indictment.
>
> 2.  The Jury's verdict finding Defendant/Appellant, guilty beyond a
> reasonable doubt of the crime of Aggravated Murder, in violation of
> [Ohio Rev. Code §] 2903.01, Count I of the indictment, is against the
> manifest weight of the evidence.
>
> 3.  Defendant Appellant was denied a fair trial due to the ineffective
> assistance of trial counsel.

(Doc. 14, RX 22.)  The state high court declined jurisdiction on Nov. 20, 2013.  (Doc.

14, RX 23; State v. Berry, 137 Ohio St.3d 1410, 998 N.E.2d 510 (2013).)


### B.  Petition for Post-Conviction Relief

On Feb. 22, 2013, Berry filed a post-conviction petition, with the following

eight grounds for relief:

> 1.  Petitioner['s] April 15th, 2011, statement to the Defiance County
> Sheriffs that was admitted into evidence against the petitioner at trial
> was obtained in violation of the petitioner['s] Fifth, Sixth, and
> Fourteenth Amendment rights as guaranteed by the United States
> Constitution and should have been excluded as derivative evidence.

2.  Petitioner['s] Fifth, Sixth, and Fourteenth Amendment rights as guaranteed by the Constitution of the United States of America were violated due to police conducting a custodial interrogation after petitioner invoked his right to counsel present during custodial interrogation and the trial court finding that petitioner['s] [waiver] of his Fifth and Sixth Amendment rights were valid based on the fact that petitioner was read his Miranda rights.

3.  Petitioner['s] Fifth, Sixth, and Fourteenth Amendment rights as guaranteed by the Constitution of the United States of America were violated by the state agents knowingly circumventing petitioner['s] right to counsel and using illegally obtained incriminating statements against petitioner at trial.

4.  Petitioner was deprived of his Fifth and Fourteenth Amendment rights to due process as guaranteed by the Constitution of the United States of America due to the prosecution eliciting perjured testimony from a state witness during petitioner['s] trial.

5.  Petitioner was deprived of his Fifth and Fourteenth Amendment rights as guaranteed by the Constitution of the United States of America to due process of law due to the trial court denying the petitioner access to funds needed to hire forensic analyst for the preparation and presentation of his defense.

6.  Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel as guaranteed by the Constitution of the United States of America due to appointed counsel['s] failure to present exculpatory evidence, impeach key witnesses, subpoena crucial witnesses, improper inducement of a guilty plea, failure to file motion to suppress phone records, and [inadequate] representation before during and after petitioner['s] trial.

7.  Petitioner was deprived of his Fifth and Fourteenth Amendment right[s] as guaranteed by the Constitution of the United States of America to due process of law due to the prosecution failing to disclose material evidence to the petitioner['s] appointed counsel upon request prior to trial.

8.  Petitioner was deprived of his Sixth Amendment right as guaranteed by the Constitution of the United States of America to [an] impartial jury due to a member of his jury failing to disclose material information during jury voir dire.

6

(Doc. 14, RX 24.) The trial court granted the state's motion to dismiss, on the basis of res judicata. (Doc. 14, RX 27.)

Berry appealed the trial court's ruling, and set forth two assignments of error for the court of appeals:

1. The trial court erred and prejudice[d] the Defendant-Appellant by denying the Appellant['s] petition for post-conviction relief without holding an evidentiary hearing.

2. The trial court erred by finding that the Appellant did not state any substantial grounds for relief in this petition for post conviction relief.

(Doc. 14, RX 29.) On Feb. 3, 2104, the court of appeals affirmed the judgment of the trial court. (Doc. 14, RX 32.)

Berry appealed that judgment to the Supreme Court of Ohio, setting forth the following ten propositions of law:

1. The trial court erred and prejudice[d] the Defendant-Appellant by denying the Appellant['s] petition for post-conviction relief without holding [an] evidentiary hearing.

2. The trial court erred by finding that the Appellant did not state any substantial grounds for relief in his petition for post-conviction relief.

3. Appellant['s] April 15th 2011 statement to the Defiance County Sheriffs that was admitted into evidence against Donny Berry at trial was obtained in violation of the Appellants Fifth, Sixth and Fourteenth Amendment rights as guaranteed by the United States Constitution and should have been excluded as derivative evidence.

4. Appellant['s] fifth Sixth and Fourteenth Amendment rights as guaranteed by the constitution of the United States of America were violated due to police conducting a custodial interrogation after Appellant invoked his right to counsel presents during custodial interrogation and the trial court finding that Appellant['s] waiver of his fifth and Sixth Amendment rights was valid based on the fact appellant was read his rights.

7

5.  Appellant['s] Fifth Sixth and Fourteenth Amendment rights as guaranteed by the constitution of the United States of America were violated by the state agents knowingly circumventing appellants right to counsel and used illegally obtained incriminating statements against appellant at trial.

6.  Appellant was deprived of his Fifth and Fourteenth Amendment rights to due process of law as guaranteed by the constitution of the United States of America due to the prosecution eliciting perjured testimony from a state witness during appellants trial.

7.  Appellant was deprived of his Fifth Sixth and Fourteenth Amendment rights as guaranteed by the constitution of the United States of America due to the trial court denying the Appellant access to funds needed to hire forensic Analyst for preparation and presentation of his defense.

8.  Appellant was deprived of his Sixth Amendment right as guaranteed by the constitution of the United States of America to [an] impartial Jury due to a member of his Jury failing to disclose material information during Jury voir dire.

9.  Appellant was deprived of his Sixth Amendment right to effective Assistance of counsel as guaranteed by the constitution of the United States of America due to appointed counsel['s] failure to present exculpatory evidence, impeach key witnesses, subpoena crucial witnesses, improper inducement of a guilty plea, failure to file motion to suppress phone records and inadequate representation before during and after appellant['s] trial.

10.  Appellant was deprived of his Fifth and Fourteenth Amendment right[s] as guaranteed by the constitution of the United States of America due to the prosecution failing to disclose material evidence to the appellants appointed counsel upon request prior to trial.

(Doc. 14, RX 34.)

The state high court declined jurisdiction on June 11, 2014.  (Doc. 14, RX 35.)

8

<u>C.  Rule 26(B) Application</u>

On Aug. 20, 2013, while his direct appeal and the appeal of his post-conviction petition were pending, Berry filed a Rule 26(B) application to reopen, based on ineffective assistance of appellate counsel.  Berry would have raised the following five assignments of error:

1.  The trial court erred and abused its discretion in denying Berry's motion to dismiss and/or suppress as statements obtained from Berry on April 15th, 2011, were obtained in violation of Berry's Fifth Amendment right against self-incrimination.

2.  The trial court erred and abused its discretion in denying Berry's motion to dismiss and/or suppress as statements were obtained from Berry on April 15th, 2011, in violation of Berry's Sixth Amendment right to counsel.

3.  The trial court committed reversible error by denying the appellant['s] motion for funds to hire a forensic Analyst.

4.  The state failed to allege venue in counts 2 through 8 of petitioner's indictment.

5.  Appellant was egregiously victimized by the ineffective assignment of his counsel when he failed to raise on appeal the various meritorious issues indicated in this application for reopening.

(Doc. 14, RX 36.)  On Nov. 25, 2013, the court of appeals denied the application.

(Doc. 14, RX 37.)

Berry appealed that denial to the Supreme Court of Ohio, setting forth as propositions of law the same five claims that he raised in his Rule 26(B) application.

(Doc. 14, RX 39.)  The state high court declined jurisdiction on March 12, 2014.

(Doc. 14, RX 40; State v. Berry, 138 Ohio St.3d 1436, 4 N.E.3d 510 (2014).)

Berry then filed a petition for a writ of habeas corpus in this court.

9

## II.  HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of

1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

courts must apply when considering applications for a writ of habeas corpus.  Under

the AEDPA, federal courts have limited power to issue a writ of habeas corpus with

respect to any claim which was adjudicated on the merits by a state court.  The

Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two
> conditions is satisfied -- the state-court adjudication resulted in a
> decision that (1) "was contrary to ... clearly established Federal law, as
> determined by the Supreme Court of the United States," or (2)
> "involved an unreasonable application of ... clearly established Federal
> law, as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that reached
> by this Court on a question of law or if the state court decides a case
> differently than this Court has on a set of materially indistinguishable
> facts.  Under the "unreasonable application" clause, a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from this Court's decisions but unreasonably
> applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002).  See also Lorraine v. Coyle, 291

F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court

precedent "if the state court applies a rule that contradicts the governing law set

forth in [Supreme Court] cases."  Williams, 529 U.S. at 405.  See also Price v.

Vincent, 538 U.S. 634, 640 (2003).

10

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

## III. PROCEDURAL DEFAULT

### A. Claims Not Fairly Presented

The respondent contends that the second, third, fourth, seventh and ninth grounds of the petition were not fairly presented to the state courts, because the claims were never raised on direct appeal. (Doc. 14, at 25-26, 68-70.)

A habeas claim may be procedurally defaulted in two distinct ways. First, by failing to comply with state procedural rules. Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006) (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)). Second, by failing to raise a claim in state court, and to pursue the claim through the state's ordinary review process. Williams, 460 F.3d at 806 (citing O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999)). The respondent argues that several of Berry's claims were not properly exhausted in state court.

A habeas petitioner cannot obtain relief unless he has completely exhausted his available state remedies. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Buell v. Mitchell, 274 F.3d 337, 349 (6th Cir. 2001) (citing Coleman v. Mitchell, 244 F.3d 533, 538 (6th Cir.), cert. denied, 534 U.S. 977 (2001)). To satisfy the exhaustion requirement, a habeas petitioner "must give the state courts one full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845. The exhaustion requirement is satisfied when the highest court in the state has been given a full and fair opportunity to rule on the petitioner's claims. Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (citing Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990)). Where the petitioner failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim. Adams v. Bradshaw, 484 F.Supp.2d 753, 769 (N.D. Ohio 2007) (citing Buell, 274 F.3d at 349).

The grounds at issue are the following:

2. The trial court erred and abused its discretion in denying appellant's motion to dismiss and or suppress as statements were obtained from appellant on April 15th, 2011, were obtained in violation of appellant's <u>Fifth Amendment</u> right against self-incrimination and is contrary to or an unreasonable application [of] Miranda v. Arizona and its [progeny].

3. The trial court erred and abused its discretion erred in denying appellant's motion to dismiss and or suppress as statements were obtained from appellant on April 15th, 2011, were obtained in violation of appellant's <u>Sixth Amendment</u> right to counsel as guaranteed by the United States Constitution and is contrary to or an unreasonable application of McNeil v. Wisconsin.

4. The petitioner['s] <u>Fifth, Sixth, and Fourteenth Amendment</u> rights as guaranteed by the United States Constitution were violated by the state agents knowingly circumventing petitioner['s] right to counsel and using illegally obtained incriminating statements against petitioner at trial. This was contrary to [or] an unreasonable application of Maine v. Moulton and its progeny.

7. Petitioner was deprived of his <u>Fifth and Fourteenth Amendment</u> right[s] as guaranteed by the United States Constitution due to the

12

trial court denying the petitioner access to funds needed to hire forensic analyst for the preparation and presentation of petitioner['s] defense and is contrary to clearly establish[ed] federal law or an unreasonable application of Ake v. Oklahoma and its progeny and clearly establish[ed] federal law.

9. The petitioner['s] <u>Fifth, Sixth, and Fourteenth Amendment</u> rights as guaranteed by the United States Constitution were violated due to police conducting a custodial interrogation after petitioner invoked his right to counsel present during custodial interrogation and the trial court finding that petitioner['s] [waiver] of this Fifth and Sixth Amendment rights were valid based on the fact that petitioner was read his Miranda rights. The court's decision was contrary to clearly establish[ed] federal law and or [an] unreasonable application of Maryland v. Shatzer.

The record reflects that Berry failed to properly exhaust these claims by raising them on direct appeal. See doc. 14, <u>RX 17</u>. Because the claims were not raised in the state court of appeals, they are barred by the Ohio rule of res judicata. Lott v. Coyle, 261 F.3d 594, 611-612 (6th Cir. 2001), cert. denied, 534 U.S. 1147 (2002); Rust, 17 F.3d at 160-161; State v. Szefcyk, 77 Ohio St.3d 93, 671 N.E.2d 233 (1996) (syllabus); State v. Perry, 10 Ohio St.2d 175, 176, 226 N.E.2d 104, 105-106 (1967) (syllabus, ¶9). Res judicata would bar Berry from litigating an issue that could have been raised on direct appeal. Perry, 10 Ohio St.2d at 180, 226 N.E.2d at 108.

## B. Post-Conviction Petition

Berry attempted to present several of the claims represented in the fourth, fifth, sixth (partially), seventh, ninth and eleventh grounds of the petition through his petition for postconviction relief in the trial court. (Doc. 14, <u>RX 24</u>.) The trial court denied his petition, finding that the claims were barred by res judicata,

because every issue raised could have been presented on direct appeal.  (Doc. 14, RX 27, at 2.)

Although Berry appealed the trial court's ruling, he did not pursue the substantive claims before the court of appeals, simply arguing that the trial court had erred in not holding an evidentiary hearing, and by finding that he did not state any substantial grounds for relief.  (Doc. 14, RX 29.)

Berry cannot return to state court to exhaust these claims because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata.  State v. Hutton, 100 Ohio St.3d 176, 182, 797 N.E.2d 948, 956 (2003); State v. Gillard, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997), cert. denied, 523 U.S. 1108 (1998).  State law no longer would permit Berry to raise the claims, hence they are defaulted.  See Williams, 460 F.3d at 806; Adams, 484 F.Supp.2d at 769.

Where a state court has failed to address a prisoner's federal claim(s) because the prisoner failed to meet a state procedural requirement, the state judgment rests on independent and adequate state procedural grounds, barring federal habeas relief.  Coleman, 501 U.S. at 729-730; Wainwright v. Sykes, 433 U.S. 72 (1977); Morales v. Coyle, 98 F.Supp.2d 849, 860 (N.D. Ohio 2000), aff'd, 507 F.3d 916 (6th Cir. 2007).  Thus, where a state prisoner has procedurally defaulted his federal claims in state court, habeas review of those claims is barred "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged

14

violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Buell, 274 F.3d at 348 (quoting Coleman, 501 U.S. at 750); Davie v. Mitchell, 324 F.Supp.2d 862, 870 (N.D. Ohio 2004), aff'd, 547 F.3d 297 (6th Cir. 2008), cert. denied, 558 U.S. 996 (2009).

The court considers four factors to determine whether a claim has been procedurally defaulted:  (1) the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim, and whether the petitioner failed to comply with the rule; (2) the court must decide whether the state courts actually enforced the procedural sanction; (3) the court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of the federal claim; and, (4) the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  Buell, 274 F.3d at 348 (citing Maupin, 785 F.2d at 138); Jacobs v. Mohr, 265 F.3d 407, 417 (6th Cir. 2001) (quoting Maupin).

Claims that Berry could have asserted in his direct appeal, but did not, are defaulted under the Ohio doctrine of res judicata.  Coleman, 244 F.3d at 538; Szefcyk, 77 Ohio St.3d 93, 671 N.E.2d 233 (syllabus); Perry, 10 Ohio St.2d at 176, 226 N.E.2d at 105-106 (syllabus, ¶9).

The Ohio rule of res judicata satisfies the first three factors in Maupin. Jacobs, 265 F.3d at 417.  The fourth factor is that the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was

actually prejudiced by the alleged constitutional error.  "Cause" for a procedural default is ordinarily shown by "some objective factor external to the defense" which impeded the petitioner's efforts to comply with the state's procedural rule. Coleman, 501 U.S. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).

### C.  Rule 26(B) Application

Finally, Berry also raised the issues in the second, third, and seventh grounds in the context of his Rule 26(B) application to reopen, as meritorious claims that appellate counsel failed to raise on direct appeal.  See doc. 14, RX 36. However, the Sixth Circuit has ruled that "bringing an ineffective assistance claim in state court based on counsel's failure to raise an underlying claim does not preserve the underlying claim for federal habeas review."  Davie v. Mitchell, 547 F.3d 297, 312 (6th Cir. 2008), cert. denied, 558 U.S. 996 (2009) (citing White v. Mitchell, 431 F.3d 517, 526 (6th Cir. 2005)).  See also Muntaser v. Bradshaw, No. 10–3112, 2011 WL 2646551, at *6 (6th Cir. July 6, 2011), cert. denied, 132 S.Ct. 1020 (2012) (Rule 26(B) motion limited to ineffective assistance of appellate counsel claims; cannot preserve underlying substantive claim).

Berry cannot return to state court to exhaust these claims because the Ohio Supreme Court has ruled that arguments that could have been raised in an initial appeal (and were not) will be barred from consideration on appeal following remand, under the doctrine of res judicata.  Hutton, 100 Ohio St.3d at 182, 797 N.E.2d at 956; Gillard, 78 Ohio St.3d at 549, 679 N.E.2d 276.  State law no longer

would permit Berry to raise the claims, hence they are defaulted. See Williams, 460
F.3d at 806; Adams, 484 F.Supp.2d at 769.

### D. "Cause"

Absent a showing of cause and prejudice to excuse the various procedural
default(s), the court will not review the merits of the defaulted claims. Lott, 261
F.3d at 612. Berry does not address cause and prejudice in his traverse, except for
the second ground, and sub-claims of the sixth ground. See generally doc. 19, at 1-
2. [The sixth ground will be addressed separately, below.]

As to the second ground, concerning a claimed Miranda violation, Berry
failed to raise it on direct appeal. See generally doc. 14, RX 17. Berry asserts that
he raised the claim in his Rule 26(B) application. (Doc. 19, at 7.) As discussed
above, raising a claim in the context of a Rule 26(B) application does not preserve
the (underlying) claim for habeas review. Davie, 547 F.3d at 312; see also
Muntaser, 2011 WL 2646551, at *6. Berry also states that he raised this issue in
his first ground for relief in his postconviction petition, and also on his appeal of the
denial of the petition. (Doc. 19, at 7.) That is not wholly accurate; his appeal of the
denial of that petition argued that the trial court erred by denying the petition
without holding an evidentiary hearing. (Doc. 14, RX 29, at v ("sole issue presented
... is did Appellant state any substantial grounds for relief that would warrant [an]
evidentiary hearing").

"Cause" for a procedural default is ordinarily shown by "some objective factor
external to the defense" which impeded the petitioner's efforts to comply with the

17

state's procedural rule.  Coleman, 501 U.S. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  Berry argues that "cause" for his procedural default of the second ground is ineffective assistance of appellate counsel.  Berry argues that, if appellate counsel had properly raised the Miranda claim on direct appeal, his second claim would be free of procedural default.  (Doc. 19, at 8.)

Ineffective assistance of counsel can serve as cause to overcome procedural default.  Smith v. Ohio, Dept. of Rehab. and Corr., 463 F.3d 426, 432 (6th Cir. 2006) (citing Deitz v. Money, 391 F.3d 804, 809 (6th Cir. 2004)); Hinkle v. Randle, 271 F.3d 239, 244 (6th Cir. 2001).  An ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted.  Edwards v. Carpenter, 529 U.S. 446, 453 (2000).  Claims of ineffective assistance of appellate counsel must be raised in a motion for reconsideration before the Ohio Court of Appeals.  Monzo v. Edwards, 281 F.3d 568, 577 (6th Cir. 2002) (citing State v. Murnahan, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992)); Ohio App. R. 26(B).

Berry did raise ineffective assistance of appellate counsel in his Rule 26(B) application for reopening.  (Doc. 14, RX 36.)  Specifically, he noted that appellate counsel failed to raise the claim that the trial court erred and abused its discretion in denying Berry's motion to suppress based on the claim that Berry's April 15th, 2011, statements "were obtained in violation of Berry's Fifth Amendment right against self-incrimination."  Appellate counsel's ineffectiveness may establish cause

18

for Berry's default of the claim at issue.  Henness v. Bagley, No. 2:01CV043, 2007
WL 3284930, at *10 (S.D. Ohio Oct. 31, 2007), aff'd, 644 F.3d 308 (6th Cir. 2011).

However, attorney error cannot serve as cause for procedural default unless
the performance of petitioner's counsel was constitutionally ineffective under the
standard established in Strickland v. Washington, 466 U.S. 668 (1984).  Ege v.
Yukins, 485 F.3d 364, 378 (6th Cir. 2007) (citing Edwards, 529 U.S. at 451); Hinkle,
271 F.3d at 244 (citing Murray, 477 U.S. at 487); Dixon v. Hudson, No. 1:05CV2499,
2008 WL 540905, at *5 (N.D. Ohio Feb. 25, 2008).

It is Berry's burden to establish cause and prejudice to overcome the
procedural default.  Hinkle, 271 F.3d at 244 (citing Lucas v. O'Dea, 179 F.3d 412,
418 (6th Cir. 1999)).  In order to establish a claim of ineffective assistance of counsel
sufficient to establish cause for the procedural default, Berry must show both
deficient performance on the part of his appellate attorney and prejudice from the
deficient performance:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment.  Second, the defendant must show
> that deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive the
> defendant of a fair trial, a trial whose result is reliable.

Hill v. Mitchell, No. 1:98CV452, 2006 WL 2807017, at *49 (S.D. Ohio Sept. 27,
2006) (quoting Strickland, 466 U.S. at 687).  See also Monzo, 281 F.3d at 579.

Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  Monzo, 281 F.3d at 579.

Ordinarily, to establish deficient performance, the petitioner must demonstrate that  appellate counsel made an objectively unreasonable decision by choosing to raise other issues, rather than a particular argument that "was clearly stronger than issues that counsel did present."  Webb v. Mitchell, 586 F.3d 383, 399 (6th Cir. 2009), cert. denied, 559 U.S. 1076 (2010) (quoting Smith v. Robbins, 528 U.S. 259, 285, 288 (2000)); see also Caver v. Straub, 349 F.3d 340, 348 (6th Cir. 2003)).

Appellate counsel is not ineffective for failing to raise every colorable claim. Wilson v. Hurley, No. 03-3481, 2004 WL 1941300 (6th Cir. Aug. 30, 2004), cert. denied, 543 U.S. 1160 (2005); Coleman v. Mitchell,  268 F.3d 417, 430 (6th Cir.), cert. denied, 535 U.S. 1031 (2001) (citing Jones v. Barnes, 463 U.S. 745 (1983)). Failure to raise an issue on appeal constitutes ineffective assistance only if there is "a reasonable probability" that the issue would have changed the result of the appeal.  Ivory v. Jackson, 509 F.3d 284, 294 (6th Cir. 2007), cert. denied, 552 U.S. 1322 (2008).

Berry contends that the "claim for ineffective assistance of trial counsel is plainly meritorious and easily discerned, such that appellate counsel's failure to raise the same on direct appeal deprived Berry of his Sixth Amendment rights to effective appellate counsel."  (Doc. 19, at 10.)  Berry argues that his statements

20

were made when he was in a custodial situation, and not represented by counsel at the time, which was post-arrest and post-indictment, but pre-arraignment.  Id. at 11.  He claims that the Fifth Amendment issue is "entirely based upon who initiated the correspondence [sic, presumably meaning, conversation] in the facility."  Id. at 13.

Once a suspect invokes the right to counsel, police may not initiate an "interrogation" of the suspect without counsel present.  Bachynski v. Stewart, 813 F.3d 241, 246 (6th Cir. 2015), petition for cert. filed (No. 15-8692) (Mar. 21, 2016) (citing Edwards v. Arizona, 451 U.S. 477, 484-485 (1981)); Shaneberger v. Jones, 615 F.3d 448, 453 (6th Cir. 2010), cert. denied, 562 U.S. 1186 (2011).  An interrogation occurs when the police "should have known" that their conduct was "reasonably likely to elicit an incriminating response."  Bachynski, 813 F.3d at 246 (quoting Rhode Island v. Innis, 446 U.S. 291, 301-302 (1980)).  A practice "that is subjectively intended to elicit an incriminating response" will lead to a finding that the police should have known that such a result would occur.  Shaneberger, 615 F.3d at 453 (quoting Innis, 446 U.S. at 301 n.7).

Nevertheless, suspects who invoke their Miranda rights remain free to change their minds.  Bachynski, 813 F.3d at 246.  When the suspect initiates a case-related conversation, the right to have counsel present can be waived.  Bachynski, 813 F.3d at 246; see also Shaneberger, 615 F.3d at 453 (quoting Edwards, 451 U.S. at 484-485).

The police are free to converse with the suspect about "routine incidents of the custodial relationship."  Bachynski, 813 F.3d at 246 (quoting Oregon v. Bradshaw, 462 U.S. 1039, 1045 (1983)).  An inquiry concerning the charges underlying an arrest relates "to routine incidents of the custodial relationship," and will not generally "initiate a conversation" for Miranda purposes.  United States v. Perez, 948 F. Supp. 1191, 1199 (S.D. N.Y. 1996) (citing Bradshaw, 462 U.S. at 1045).

At the suppression hearing[1], the trial court heard testimony from Carolyn Kuntz, a classification officer at the Corrections Center of Northwest Ohio.  (Doc. 14-5, hearing tr., at 20-42.)  Ms. Kuntz's duties include surveying newly-arrived inmates, to determine how to house them, including the appropriate security level, any health or psychiatric issues, drug or alcohol use, whether they need protective custody.  Id. at 21, 33, 38-39.  Her testimony was subject to cross-examination.

On direct examination, Ms. Kuntz testified,

> . . . When he came out, he was very upset. I asked him if he knew why he was there and he said yes, for killing my friend and he was insistent that he wanted to talk to the prosecutors in Defiance County as soon as possible because he did not do it and he wanted to talk to them.  I asked him if he knew who did kill his friend and he told me yes, Jonathon Gaines.  We went on through the survey.  I finished asking him all the questions that we did.  I assured him that I would let Tim Clay, our investigator, know his wishes and our investigator would take it from there.

---

[1] Although defendant primarily argued in the hearing on his motion to suppress that his Sixth Amendment right to counsel was violated (doc. 14-5, at 11, 15), the testimony also relates to the Miranda issue at hand.

(Doc. 14-5, at 24.)  Berry states that Kuntz did convey the message to the investigator, and "Berry provided his statement which was used against him to law enforcement."  (Doc. 19, at 12.)

In response to questions from the court, Ms. Kuntz testified that Berry was brought into the correctional facility late the previous evening, and as there was no classification officer on duty at that hour, she spoke with him the next morning. (Doc. 14-5, at 29-31.)  Ms Kuntz testified that "I always start off with do you know what you're being charged with, why you're here" because some people don't seem to know that.  (Doc. 14-5, at 33; see also id. at 27.)  The court asked her what happened after that.

KUNTZ:  Then he replied that he was here being charged for the murder of his best friend.

THE COURT:  Okay.  And then what?

KUNTZ:  And I said do you – And he said at that time I need to talk to Defiance County investigators and I asked him why he needed to talk to them and he said because I'm going to tell them who did it.  And I asked him do you know who did it and that's when he replied Jonathon Gaines.

* * * * *

THE COURT:  . . . You're sure that it wasn't he said I'm charged with murder of my best friend but I didn't do it and I know who did and you may have said why don't you talk to the cops.

KUNTZ:  Absolutely not.  He was very insistent that he get a hold of them immediately.

THE COURT:  And he raised the issue of contacting them; you're certain that you didn't suggest to him that the thing to do was to talk to the cops.

23

KUNTZ:  No.

(Doc. 14-5, hearing tr., at 34, 37.)

On cross, defense counsel asked Ms. Kuntz:

Q.  Did Mr. Berry's request to talk to investigators occur after you had already asked do you know who killed him?

A.  He asked me – He said he needed to talk to them right away.

Q.  Had you already asked do you know who killed him?

A.  No.

(Doc. 14-5, at 41.)

After hearing testimony at the hearing on the motion to suppress, the trial court concluded that:

It's clear from the content of the statement together with the testimony previously adduced that the Defendant, in fact, initiated the law enforcement contact leading to the April 15th statement.  It's clear that he was adequately mirandized, that he voluntarily waived those rights.

(Doc. 14-5, suppression hearing tr., at 54.)  The court's judgment entry noted that testimony and evidence was presented, including a stipulated transcribed statement and a related DVD recording of Berry's April 15 statement.  The court found that Berry had initiated contact[2] with law enforcement, and that "the

---

[2]  In his argument on the first ground (ineffective assistance of appellate counsel), Berry contends that the trial court "incorrectly found" that Berry, rather than law enforcement, initiated the conversation which led to his admission that he was present in the car with the victim.  (Doc. 19, at 3.)  He provides no evidentiary support for his assertion.

deputies went above and beyond standard requirements in advising the Defendant of his right to Counsel and related Miranda Rights." (Doc. 14, RX 8, at 1.)

The court of appeals, in denying Berry's Rule 26(B) application, ruled that appellate counsel could not be found ineffective in his tactical decision to forgo pursuing this argument further on appeal. (Doc. 14, RX 37, at 1-2.)

Looking to the motion hearing transcript, Berry clearly waived his right to remain silent and indicated that he wanted to speak to the prosecutor. See, e.g., Jackson v. Lafler, No. 09–1771, 2011 WL 6382099, at *4 (6th Cir. Dec. 21, 2011), cert. denied, 132 S.Ct. 1979 (2012). Ms. Kuntz's inquiry concerning the charges underlying his arrest related "to routine incidents of the custodial relationship," and cannot be considered an interrogation for Miranda purposes. Perez, 948 F. Supp. at 1199 (citing Bradshaw, 462 U.S. at 1045). The court cannot consider Ms. Kuntz's question (do you know what you're charged with?) as part of a routine intake interview, as a practice "that is subjectively intended to elicit an incriminating response," that the police should have known that such a result would occur. See Shaneberger, 615 F.3d at 453 (quoting Innis, 446 U.S. at 301 n.7).

Berry cannot show ineffective assistance of his appellate counsel for failing to raise the issue on appeal because the underlying claim lacks merit. Moore v. Mitchell, 708 F.3d 760, 777-778 (6th Cir. 2013), cert. denied, 134 S.Ct. 693 (2013). Ineffective assistance cannot serve as cause unless counsel's performance was constitutionally ineffective under Strickland. Ege, 485 F.3d at 378. In addition, given the appellate court's assessment of the issue, the court cannot find a

25

reasonable probability that this issue would have changed the result of the appeal had it been raised by appellate counsel.  Berry has failed to establish that his appellate attorney was ineffective under the two-pronged standard set forth in Strickland sufficient to establish cause and prejudice to excuse the procedural default.  See, e.g., Hinkle, 271 F.3d at 246; Henness, 2007 WL 3284930, at *10; Hill, 2006 WL 2807017, at *52.  Thus, Berry has not shown "cause," and the second ground is procedurally defaulted.

Because Berry has not shown cause, it is unnecessary to consider the issue of prejudice.  Murray, 477 U.S. at 494; Shabazz v. Ohio, 149 F.3d 1184, 1998 WL 384559, at *1 (6th Cir. June 18, 1998) (TABLE, text in WESTLAW).

Otherwise, Berry does not contest that the grounds discussed above are procedurally defaulted.  (Doc. 19, at 1-2.)  The petition should not be granted on the basis of the second, third, fourth[3], fifth, seventh, ninth, and eleventh grounds of the petition because these claims were not fairly presented to the Ohio Court of Appeals, thus were not properly exhausted, and are now defaulted.

In addition, Berry concedes that, as to the eighth ground, "the state court record will not establish that the claimed error was substantially injurious to Berry."  Thus, Berry does not argue its merits.  (Doc. 19, at 1.)

---

[3]  In his Traverse, Berry states that the grounds not procedurally defaulted are one, a sub-claim of six, eight, and ten, but then in the next paragraph states that he will argue the merits of the fourth ground.  (Doc. 19, at 1.)  However, when addressing the fourth ground subsequently, he simply states he will rest on the argument contained in the petition.  He does not address the state court's determination that the claim is res judicata.  (Doc. 19, at 14-15.)

The court will consider the merits of the grounds remaining.

## IV.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The first ground of the petition is:

> The state court's determination that appellant was not denied the effective assistance of appellate counsel when counsel failed to raise on appeal various  meritorious issues violating appellant's <u>Sixth Amendment</u> right to the effective assistance of counsel as guaranteed by the United States Constitution was contrary to or an unreasonable application of federal law and Strickland v. Washington which resulted in a decision that was based on an unreasonable determination of the facts.

Berry raised his claim of ineffective assistance of appellate counsel in his Rule 26(B) application to reopen.  Berry put forward five proposed assignments of error which he argued demonstrated that appellate counsel was ineffective.  (Doc. 14, RX 36.)

> The court of appeals denied his application to reopen, stating that:

> Appellate counsel raised three assignments of error challenging the sufficiency of the evidence, alleging the verdicts were against the manifest weight of the evidence, and ineffective assistance of trial counsel.  The five additional assignments of error set forth herein are either lack legal support or otherwise related to the issues previously raised and addressed.  Appellate counsel could reasonably have decided as a matter of tactic not to bury his broader and better arguments "in a verbal mound made up of strong and weak contentions."

(Doc. 14, RX 37, at 1-2.)

Under the Sixth Amendment to the U.S. Constitution, "the right to counsel is the right to effective assistance of counsel."  Missouri v. Frye, 132 S.Ct. 1399, 1404

(2012); Joshua v. DeWitt, 341 F.3d 430, 437 (6th Cir. 2003) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal, as well as at trial. Evitts v. Lucey, 469 U.S. 387 (1985).

The Sixth Circuit discussed the general standard for ineffective assistance of counsel in Monzo v. Edwards:

> To establish ineffective assistance of counsel under Strickland, the defendant must show that his counsel's performance fell below an objective standard of reasonableness and that his counsel's errors were so serious as to prejudice the defendant.  Review of counsel's performance is highly deferential and requires that courts "indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Monzo, 281 F.3d at 579 (internal citations omitted).  See generally Strickland, 466 U.S. at 689 (two-part test).

In the habeas context, this court considers petitioner's ineffective assistance claim "within the more limited assessment of whether the state court's application of Strickland to the facts of this case was objectively unreasonable."  Washington v. Hofbauer, 228 F.3d 689, 702 (6th Cir. 2000).

The Supreme Court has affirmed that this court must approach the state court's rulings in a highly deferential manner.  The Court stated in Harrington v. Richter that the "pivotal question" of whether the state court's application of Strickland standard was unreasonable is different from simply deciding whether

28

counsel's performance fell below Strickland's standard.  Harrington v. Richter, 562 U.S. 86, 101, 131 S.Ct. 770, 785 (2011).  The focus on habeas review is "not whether counsel's actions were reasonable," rather, the question is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 562 U.S. at 105.

Richter instructed that the petitioner must show that the ruling of the state court "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103; see also Montgomery v. Bobby, 654 F.3d 668, 676 (6th Cir. 2011) (en banc), cert. denied, 132 S.Ct. 2376 (2012) (quoting Richter).  The Court acknowledged that, under the AEDPA, this standard was "difficult to meet," however, it was "meant to be" so.  Id. at 102; see also Montgomery, 654 F.3d at 676.

Berry suggests that the court address eleven "considerations that ought to be taken into account in determining whether an attorney on direct appeal performed reasonably competently."  (Doc. 19, at 5, citing Mapes v. Coyle, 171 F.3d 408, 427-428 (6th Cir. 1999).)  Mapes was a death penalty case, which predated Richter and its "highly deferential" approach.  See Richter, 562 U.S. at 105.

The correct approach on habeas review, after Richter, is not a focus on whether counsel's actions were reasonable, Richter, 562 U.S. at 105, which was the previous analysis under Mapes ("whether an attorney on direct appeal performed reasonably competently").  Richter stated the issue for a habeas court, whether the state court's application of Strickland was unreasonable, is distinct from whether

counsel's performance fell below Strickland's standard.  Richter, 562 U.S. at 101.

Rather, the question is "whether there is any reasonable argument that counsel

satisfied Strickland's deferential standard."  Richter, 562 U.S. at 105.

Berry contends that "counsel was ineffective on appeal for omitting the

suppression issue," and that this issue was "objectively better" than the issues

actually raised by appellate counsel.  (Doc. 19, at 6.)  In his Rule 26(B) application,

Berry argued that the trial court abused its discretion in denying his motion to

suppress statements obtained from him on April 15, 2011, in violation of his Fifth

and Sixth Amendment rights.  (Doc. 14, RX 36.)

The trial court had held a hearing on the motion to suppress, as discussed

above, and after hearing testimony from two witnesses, concluded that:

> It's clear from the content of the statement together with the testimony
> previously adduced that the Defendant, in fact, initiated the law
> enforcement contact[4] leading to the April 15th statement.  It's clear
> that he was adequately mirandized, that he voluntarily waived those
> rights.  It was his choice to proceed without counsel.  He was given
> every opportunity to continue with counsel.

(Doc. 14-5, suppression hearing tr., at 54.)  The court of appeals, in denying Berry's

Rule 26(B) application, ruled that appellate counsel could not be found ineffective in

his tactical decision to forgo pursuing this argument further on appeal.  (Doc. 14,

RX 37, at 1-2.)

---

[4] As noted earlier, Berry contends that the trial court "incorrectly found" that
Berry, rather than law enforcement, initiated the conversation which led to his
admission that he was present in the car with the victim; however, he provides no
evidentiary support for his assertion.  (Doc. 19, at 3.)

Having reviewed the transcript of the suppression hearing, in light of the applicable standards on habeas review, this court cannot find that the ruling of the state court of appeals "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.  Reviewing the state court's ruling in accordance with the guidance set forth by the U.S. Supreme Court in Richter, the court finds that Berry has failed to demonstrate that the state court's application of Strickland  was unreasonable.  The petition should not be granted on the basis of the first ground.

## V.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

The sixth ground of the petition is:

> Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel as guaranteed by the United States Constitution due to appointed counsel['s] failure to present exculpatory evidence, impeach key witnesses, subpoena crucial witnesses, improper inducement of a guilty plea, and [inadequate] representation before during and after petitioner['s] trial, filing frivolous motions which prejudiced the petitioner['s] right to a speedy trial, failure to object to the hearsay testimony of Doug Engel, Dave Richardson, and Tobey Delaney, which was contrary to clearly establish[ed] federal law and or an unreasonable application of Strickland v. Washington.

The respondent argues that Berry only partially exhausted the sixth ground (as set forth in the petition) on direct appeal, and that the ineffectiveness arguments he only presented in his post-conviction petition are procedurally defaulted, for the reasons set forth earlier.  (Doc. 14, at 77-78.)  The court agrees.

31

Berry argues that error concerning an "unexhausted aspect" of this claim constitutes a manifest injustice, and should excuse the procedural default as to that sub-part. (Doc. 19, at 21.) The court is unable to discern which sub-part Berry is addressing, and his argument in support consists of a single sentence: "Berry believes that the error here constitutes a manifest injustice." (Doc. 19, at 21, citing Granberry v. Greer, 481 U.S. 129, 135-136 (1987), and Townsend v. Sain, 372 U.S. 293 (1963).) A conclusory statement is insufficient to support a claim of "manifest injustice." See, e.g., Lott v. Stegall, No. 03-1150, 2003 WL 22205072, at *2 (6th Cir. Sept. 22, 2003), cert. denied, 540 U.S. 1123 (2004) (procedurally defaulted claims barred where petitioner did not show new reliable evidence of actual innocence for manifest justice exception); Enyart v. Coleman, 29 F. Supp. 3d 1059, 1081-1082 (N.D. Ohio 2014) (petitioner must support allegations with new reliable evidence, citing Schlup v. Delo, 513 U.S. 298, 324 (1995)).

As to the claims presented on direct appeal, the respondent contends that the state court of appeals applied the correct standard under Strickland, and that the court's decision was not unreasonable. (Doc. 14, at 44-45.)

On direct appeal, Berry argued ineffective assistance:

. . . where trial counsel failed to object to hearsay testimony by law enforcement officers of statements made by witness who also testified at trial, where trial counsel filed ineffective and premature motions which tolled the running of time against Mr. Berry's right to a speedy trial, and where trial counsel failed to object to Chief Deputy Engler's unqualified expert opinion as to Mr. Berry's state of mind while commenting on a video played before the jury.

32

(Doc. 14, RX 17, at 22.)  The state court of appeals set forth the proper standard

under Strickland (doc. 14, RX 20, at 26; Berry, 2013 WL 2638704, at *11), and ruled

as follows:

> In arguing that his counsel was ineffective, Berry first contends that
> his counsel failed to object to inadmissible hearsay evidence.  Hearsay
> is defined as "a statement, other than one made by the declarant while
> testifying at the trial or hearing, offered in evidence to prove the truth
> of the matter asserted." Evid.R. 801(C).  Hearsay is generally not
> admissible unless an exception applies.  Evid.R. 802.
>
> Berry first claims that his counsel should have objected to the
> testimony of Detective Dave Richards when Detective Richards was
> testifying as to what Shannon Wilson had informed him.  In the
> portion of testimony cited, Detective Richards was being asked if he
> spoke to Shannon Wilson, and what he learned in speaking to Shannon
> Wilson.  Berry argues that allowing Detective Richards to tell the jury
> what Shannon Wilson had informed him of improperly bolstered her
> credibility and was hearsay.  However, at this point in the trial,
> Detective Richards was merely testifying to how he proceeded with his
> investigation and what he learned from one witness to the next that
> led him forward.  We do not find this is hearsay.  However, even if the
> statements were hearsay, Shannon Wilson took the stand and was
> fully subject to cross-examination.  Moreover, much of the information
> learned from Shannon, such as New York having an apartment with
> Calvin Lane, Berry made in statements in interviews to the police.
> Under these circumstances, we cannot find that counsel's failure to
> object was deficient or prejudicial.
>
> Berry makes a similar claim regarding the testimony of Sergeant
> Delaney who spoke with Jonathan Gaines.  Sergeant Delaney's
> testimony merely detailed how his part of the investigation proceeded,
> including when and why he spoke with Jonathan Gaines, and
> Delaney's attempts to track Berry's movement around the date of the
> murder.  In addition, Jonathan Gaines took the stand, and was fully
> subject to cross-examination.  Thus we cannot find counsel's failure to
> object to Sergeant Delaney's testimony was deficient or prejudicial.
>
> Berry next argues that Deputy Engel was improperly allowed to testify
> as to what he thought Berry was "thinking" during Berry's interviews.
> Berry does not cite specific provisions of the transcript to support his

argument that Deputy Engel improperly testified as to Berry's thoughts.  Our own review of the transcript revealed the following locations where Deputy Engel might have referred to Berry's thoughts during the interview.

> And if you saw at first, we did not have to urge the Defendant, Donny Berry, to explain to us why he was at the sheriff's office.  He already had a predisposition.  He knew why we wanted to talk to him.

> (Tr. at 614).

> * * *

> Then his story changes to meet what our knowledge is of the crime at that point in time and he then addresses the fact that he is there at the scene but only trying to state that he's just there so it's not his fault but that, again the further we look into it goes away.

> (Tr. at 651).

> * * *

> In this—During all the interviews, Donny would—We watch his movements, his body language.  When he would—He can turn on the charm or he can turn on the false pretenses, so to speak.  He—He begins to act like he's crying.  He—But then he quickly shuts that off.  There is [sic] no tears shed.  He can sniffle and, and over the years of dealing with Donny, he can do this quite often.  He changes quite rapidly.  He can turn the charm on and then he can be very angry, very intimidating and, and abusive.

> (Tr. at 653–654).

> * * *

> Q. So if he were still looking for it, and the Defendant had it [drug bag], he might want some protection? You understand what I'm saying?

34

A. Yes, I do.  Again, that's kind of a—He—He may think that he needs protection.

(Tr. at 696–97).

Based on a review of the transcript and these sections, we do not find that Chief Deputy Engel testified to anything other than his observations.  In fact, in the one section where the prosecutor specifically asked Chief Deputy Engel about why Berry thought he might have needed protection, Berry's counsel did object, and it was sustained on grounds that it called for speculation.  (Tr. at 652).  Thus it is unclear from the transcript where Berry's trial counsel failed to object to inadmissible testimony, and how any failure to object so prejudiced Berry as to warrant a new trial.

Finally, Berry argues that trial counsel filed premature and ineffective motions that provided the State more time to prepare for trial and tolled the running of speedy trial time.  At the outset, it should be noted that a hearing was held on whether Berry's speedy trial rights had been violated approximately two weeks before the trial, and it was found that the trial was being held well within the allotted time.  Next, it should be noted that Berry's trial counsel filed a motion to suppress a statement that Berry made to Carolyn Kuntz, a classification officer at the Corrections Center of Northwest Ohio, where Berry told yet another story, that Jonathan Gaines had killed New York.  Rather than proceed on the matter, the State ultimately agreed not to present that testimony.  So while the suppression motion might not have been "granted" on that issue, counsel was still able to "leverage" a motion to suppress into keeping out a statement that clearly would have been against Berry's interest for the jury to hear.

Berry contends on appeal that counsel's premature and "ineffective" motions allowed the State more time to prepare for trial, but there is absolutely nothing in the record to establish that the State was not prepared for trial at any stage and that had Berry's counsel not filed any of the motions that he filed the State would have been unable to secure the same witnesses and exhibits used against him.  Thus even if there was error in filing any of the motions, Berry is completely unable to establish any prejudice, as any claims that the State would not have been prepared are entirely speculative.

Having found no errors by counsel and no prejudice to Berry, Berry's third assignment of error is overruled.

35

(Doc. 14, RX 20, at 27-31; Berry, 2013 WL 2638704, at *12-*14.)

Again, the general standard for ineffective assistance of counsel under Strickland requires a showing that (1) counsel's performance fell below an objective standard of reasonableness and (2) that his counsel's errors were so serious as to prejudice the defendant.  Monzo, 281 F.3d at 579 (internal citations omitted); doc. 14, RX 20, at 26; Berry, 2013 WL 2638704, at *11; see generally Strickland, 466 U.S. at 689 (two-part test).

This habeas court considers the ineffective assistance claim "within the more limited assessment of whether the state court's application of Strickland to the facts of this case was objectively unreasonable."  Washington, 228 F.3d at 702.  The court must approach the state court's rulings in a highly deferential manner.  Richter directs that the "pivotal question" of whether the state court's application of Strickland standard was unreasonable is different from simply deciding whether counsel's performance fell below Strickland's standard.  Richter, 562 U.S. at 101, 131 S.Ct. at 785.   The focus is "not whether counsel's actions were reasonable," rather, the question is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Richter, 562 U.S. at 105.

Under Richter, the petitioner must show that the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Richter, 562 U.S. at 103.  Reviewing the state court's ruling in accordance with the guidance set forth by the U.S. Supreme Court in Richter, the court finds that Berry has failed to

demonstrate that the state court's application of Strickland  was unreasonable.  The
petition should not be granted on the basis of the sixth ground.


## VI.  INSUFFICIENCY OF THE EVIDENCE

Finally, the tenth ground of the petition is:

> The state court's determination in denying defendant/appellant'[s]
> motion for acquittal and the evidence was insufficient to support the
> jury's conviction of  Defendant/Appellant for the crime of aggravated
> murder, in violation of [Ohio Rev. Code §] 2903.01, Count I of the
> indictment depriving the petitioner of his <u>Fifth and Fourteenth
> Amendment</u> right to due process of law.


The claim was presented on direct appeal, arguing that no evidence was
presented to the jury that Berry "caused the death of another," that could support a
verdict that Berry was guilty of Aggravated Murder beyond a reasonable doubt.
Berry, by his own admission, was present when the victim was shot in the head, but
he contends that merely being present does not present sufficient evidence to
support the verdict.  (Doc. 14, RX 17, at 16-17.)

The state court of appeals did not rely on federal law in ruling on Berry's
sufficiency of the evidence claim but rather relied on state cases, including State v.
Smith, 80 Ohio St.3d 89, 113, 684 N.E.2d 668, 691 (1997), cert. denied, 523 U.S.
1125 (1998), which followed the sufficiency of evidence standard set forth in Jackson
v. Virginia, 443 U.S. 307 (1979).  (Doc. 14, RX 20, at 8-9; Berry, 2013 WL 2638704,
at *3.)  Thus, the issue is whether the state court decision was an "unreasonable
application" of clearly established federal law; in other words, whether the state

37

court identified the correct governing legal principle from  Supreme Court decisions, but unreasonably applied that principle to the facts of Berry's case.  Williams, 529 U.S. at 410-412.

Under Supreme Court precedent, a sufficiency of the evidence claim is reviewed by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson, 443 U.S. at 319; see also Cavazos v. Smith, 132 S.Ct. 2, 6 (2011) (per curiam); Bagby v. Sowders, 894 F.2d 792, 794 (6th Cir.) (en banc), cert. denied, 496 U.S. 929 (1990).  As noted above, this was the standard applied by the state appellate court.  (Doc. 14, RX 20, at 8-9; Berry, 2013 WL 2638704, at *3.)  Thus, the state court identified the correct governing legal principle from Jackson v. Virginia.

Under Jackson, the habeas court does not make its own subjective determination of guilt or innocence.  Russell v. Anderson, No. 1:07CV3434, 2008 WL 4534144, at *3 (N.D. Ohio Oct. 6, 2008) (citing Herrera v. Collins, 506 U.S. 390, 402 (1993)); Talley v. Hageman, 619 F.Supp.2d 407, 416 (N.D. Ohio 2008) (citing Herrera).  This court does not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury.  White v. Steele, 602 F.3d 707, 710 (6th Cir. 2009), cert. denied, 562 U.S. 858 (2010) (quoting Brown v. Konteh, 567 F.3d 191, 205 (6th Cir. 2009)); Dover v. Warden, Belmont Corr. Inst., No. 5:08CV2130, 2009 WL 1940728, at *14 (N.D. Ohio July 2, 2009).

38

The Supreme Court recently emphasized that "it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial."  Cavazos, 132 S.Ct. at 4.  The Court stressed that Jackson "unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'"  Cavazos, 132 S.Ct. at 6 (quoting Jackson, 443 U.S. at 326).  "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury."  Coleman v. Johnson, 132 S.Ct. 2060, 2062 (2012) (per curiam) (quoting Cavazos).

On habeas review, "the Jackson v. Virginia standard is so demanding that '[a] defendant who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle.'"  Davis v. Lafler, 658 F.3d 525, 534 (6th Cir. 2011) (en banc), cert. denied, 132 S.Ct. 1927 (2012) (quoting United States v. Oros, 578 F.3d 703, 710 (7th Cir. 2009)).  The Supreme Court recently affirmed that "Jackson claims face a high bar in federal habeas proceedings."  Coleman v. Johnson, 132 S.Ct. at 2062.

A sufficiency of the evidence claim must be addressed "with explicit reference to the substantive elements of the criminal offense as defined by state law."  Sanford v. Yukins, 288 F.3d 855, 860 (6th Cir.), cert. denied, 537 U.S. 980 (2002) (quoting Jackson, 443 U.S. at 324 n.16).  Thus, the federal court must look to state

39

law to determine the elements of the crime.  Cameron v. Birkett, 348 F.Supp.2d 825, 838-839 (E.D. Mich. 2004) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999)).

As set forth by the state court, Aggravated Murder is codified in Ohio Revised Code 2903.01(A), and reads, "No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy." (Doc. 14, RX 20, at 10; Berry, 2013 WL 2638704, at *3, quoting Ohio Rev. Code § 2903.01(A).)

The state court provided a lengthy recitation of the evidence provided at trial, which will not be repeated in its entirety here.  See generally doc. 14, RX 20, at 10-23; Berry, 2013 WL 2638704, at *4-*10.  The state called twenty-one witnesses to prove its case against Berry.  (Doc. 14, RX 20, at 10; Berry, 2013 WL 2638704, at *4.)

There was testimony that the victim and Berry had been involved in drug trafficking, and that Berry told one witness that he was going to make a "power move" that weekend.[5]  There was testimony that Berry was seeking bullets for a handgun "off the streets."  (Doc. 14, RX 20, at 10; Berry, 2013 WL 2638704, at *4.)

There was testimony that the victim and Berry were together on the evening of the murder, and that the victim had called a friend at about 10:30 p.m., told him he was with Berry, and that he was going to arrive at the friend's house to pick him

---

[5]  The victim was murdered on Sunday, Feb. 20, 2011.

40

up "soon."  When the victim failed to arrive at the friend's house, the friend called him, and sent the victim text messages, without response.  The friend's testimony was corroborated by phone records.  (Doc. 14, RX 20, at 12; Berry, 2013 WL 2638704, at *5.)

Evidence revealed that, at some point between 10:40 p.m. and 11 p.m., the victim was fatally shot in the head while in the passenger seat of his car.  The victim was removed from the car, left at a spot in the driveway long enough for blood to pool, partially undressed, and then placed in the trunk of his car.  The killing took place at the vacant, foreclosed former residence of Berry's mother.  (Doc. 14, RX 20, at 12-13, 14; Berry, 2013 WL 2638704, at *5-*6.)

Over the next few days, the victim's girlfriend attempted to locate him, calling around to various friends in an attempt to find him.  One of the friends reported to her that he thought he had seen the victim's car parked, and the girlfriend alerted police to the location.  (Doc. 14, RX 20, at 13; Berry, 2013 WL 2638704, at *5-*6.)

After obtaining a warrant, the police found the victim's body in the trunk.  At the scene, Berry gave a statement to one of the police officers stating that he had not seen the victim since he had dropped Berry off at his mother's house that previous Sunday.  When police learned that Berry appeared to be the last person to see the victim alive, they began to look for places that where they suspected the two might have met.  Berry had dealt with the police as an informant in the past, and had met them at the vacant former residence of Berry's mother.  When the police

41

checked that location, they found blood at the scene, which proved to be the victim's. (Doc. 14, RX 20, at 13-14; Berry, 2013 WL 2638704, at *6.)

Over time, police conducted several interviews with Berry.  In the first, he initially told police that he had last seen the victim when he dropped Berry off at his mother's house.  Later in that interview, the police told Berry that they thought the victim had been killed at his mother's old residence.  Berry then told a story about how he was going to give the victim some tires at his mother's old house, but denied going there with the victim that night.  Instead, he said that after the victim dropped him off at this mother's house, he drove her car to try to meet with a woman.  (Doc. 14, RX 20, at 14-16; Berry, 2013 WL 2638704, at *6-*7.)

After obtaining warrants, the police searched Berry's mother's house and car. They had learned from witnesses that Berry had been driving that car the day after the murder.  The police uncovered blood in the mother's car, which was determined to be the victim's.  During the search of the mother's house, the police accidentally left the affidavit along with the search warrant, which contained all the information they had uncovered in the course of their investigation.  (Doc. 14, RX 20, at 16-17; Berry, 2013 WL 2638704, at *7.)

Later that night, Berry contacted police and told them he wanted to speak with them again.  Berry then appeared with counsel for a second interview with police.  At the second interview, Berry stated that on the night of the victim's death, he and the victim had gone to his mother's old house, and a black SUV pulled in behind them.  Three men, one of whom ("Moon") Berry recognized, ordered Berry

42

out of the car, and then shot the victim in his car.  The victim was stripped and Berry was forced to put the victim in the trunk.  Then the three men took Berry's wallet, and both cars, and drove off, leaving Berry behind.  (Doc. 14, RX 20, at 17; Berry, 2013 WL 2638704, at *7.)  "Berry claimed that he then walked back to his mother's house, which was over five miles, in a snow/ice storm on a four-lane highway."  (Doc. 14, RX 20, at 17-18; Berry, 2013 WL 2638704, at *7.)

The police continued their investigation, and identified two men who might have been the "Moon" that Berry said he recognized as one of the killers.  Berry identified one of the men as "Moon."  After checking out Moon's alibi, the police were comfortable eliminating him as a suspect.  (Doc. 14, RX 20, at 18-19; Berry, 2013 WL 2638704, at *7.)

The police subsequently indicted and arrested Berry for the Aggravated Murder of the victim.  The day after he was arrested, Berry contacted police and stated he wanted to speak with them again.  In his third interview, Berry said he and the victim had driven out to his mother's former home to meet with Berry's brother.  This time, it was Moon, Berry's brother, and another man in a black SUV which pulled up behind them.  Berry was ordered out of the victim's car, and into the back seat of the SUV.  He saw his brother shoot the victim in his car, and then he was made to put the victim's body into the trunk of the victim's car.  Berry was then driven to his mother's house and dropped off.  (Doc. 14, RX 20, at 19; Berry, 2013 WL 2638704, at *8.)

In prior interviews, Berry had stated that he did not know where his brother was, that they did not talk, and that his brother might be out of state.  The police investigated, and found that Berry's brother had been in the vicinity of Pontiac, Michigan shortly before and after the murder.  (Doc. 14, RX 20, at 19-20; Berry, 2013 WL 2638704, at *8.)

Additional testimony established that Berry was in possession of the victim's bag which had contained marijuana and cocaine that the victim had been transporting, and that Berry had money after the death, whereas there was testimony that he had been "broke" on the preceding Friday.  "Testimony was also given that Berry sent text messages and made calls to New York [the victim] on the day following New York's death, when Berry, even according to his own later statements, would have known New York was dead."  (Doc. 14, RX 20, at 20; Berry, 2013 WL 2638704, at *9.)

The state court of appeals found that reasonable minds could find that each element had been proven and that Berry had committed Aggravated Murder.  The court found there was sufficient direct and circumstantial evidence to support each element of the conviction.  (Doc. 14, RX 20, at 21-22; Berry, 2013 WL 2638704, at *9.)  Circumstantial evidence which the jury finds convincing may support a guilty verdict.  *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir.), *cert. denied*, 135 S. Ct. 498 (2014) ("Circumstantial evidence alone is sufficient to sustain a conviction"); *United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991) (circumstantial evidence may support guilty verdict, even if such evidence is inconclusive).  *See also Richter*,

44

562 U.S. at 113 (circumstantial evidence included defendant's "shifting story concerning his involvement"); *Jackson v. Virginia*, 443 U.S. at 324-325.

Having reviewed the decision of the state court, this court cannot find that its decision is an unreasonable application of Jackson v. Virginia.  See generally Cavazos, 132 S.Ct. at 6; Jackson, 443 U.S. at 319.  The court cannot find that "no rational trier of fact could have agreed with the jury."  Coleman, 132 S.Ct. at 2062 (quoting Cavazos).  The petition should not be granted on the basis of the tenth ground.

## SUMMARY

The petition for a writ of habeas corpus should be denied.  The second, third, fourth, fifth, seventh, ninth, and eleventh grounds of the petition were procedurally defaulted.  Berry has abandoned the eighth ground.

Berry has failed to demonstrate that the state court's application of Strickland  was unreasonable, thus the petition should not be granted on the basis of the first or sixth grounds.  Berry has also failed to show that the state court's decision involved an unreasonable application of Jackson v. Virginia, thus the petition should not be granted on the basis of the tenth  ground.

RECOMMENDATION

The petition for a writ of habeas corpus should be denied.

Dated:  Apr. 29, 2016          /s/ Kenneth S. McHargh
                               Kenneth S. McHargh
                               United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).